**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EDDIE L. ANDREWS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-CV-460-TCK-PJC |
| ) | |
| UNITED STATES, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

On September 6, 2006, Plaintiff Eddie L. Andrews, along with eight other individuals (as well as "John & Jane Doe") appearing pro se, filed a complaint entitled "Due Process" which purports to be a class action on behalf of "We the People." In addition to the "United State's State Justice Institute," they have sued the States of Oklahoma, Ohio, Washington, California, Texas, and North Carolina, numerous individuals, First National Bank, CNA Surety, Westfield Insurance, and John & Jane Doe. Many of the individual defendants appear to be state and federal officials, including some judges. Oklahoma Attorney General Drew Edmondson and the State of Ohio, its governor, attorney general and state auditor (the "Ohio defendants"), and CNA Surety ("CNA") have filed motions to dismiss (Dkt. ## 11, 49, 99) which have been helpful to the Court. Although most of the other defendants have not yet filed motions or entered appearances, the Court finds it prudent to address the motions to dismiss pending at this time in an effort to conserve valuable time and resources necessary to address the type of pleading filed by plaintiffs.

**I.    The "Complaint"**

The Complaint is a 116-page document that initially purports to state claims for "Substantive Due Process / Racketeering / Fraud Upon the Court / and violation of the Separation of Powers against them in they're [sic] natural persons . . . ." Complaint, Dkt. # 1, at 2. Later in the document,

plaintiffs articulate their cause of action to include "a verifiable trespass and injury by defendants engaged in practices in violation of the Constitutional Separation of Powers, Substantive Due Process, Perjury of Office and *Breach of Condition* for qualification of office and assistance for Federally Assisted Programs." Id. at 3 (emphasis in original). They claim that "defendants in furtherance of this conspiracy, committed, attempted to commit, did commit and solicit crimes as charged including violations of Protected Rights, Civil Liberties, personal freedoms and privacy." Id. at 3-4. The Complaint references the United States Constitution, state constitutions, international treaties, various federal and state statutes[1] and cases, including the full text of a 44-page memorandum opinion in American Civil Liberties Union v. National Security Agency, No. 06-CV-10204 (E.D. Mich. August 17, 2006) as well as the opinion in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

In their "theory of the case," plaintiffs reference the defendants as "thugs" of an "absolute heinous criminal nature. . . ." Complaint, Dkt. # 1, at 70.[2] Plaintiffs set forth "Issue Number One" as "'[t]he 'United States of America' and the 'United States' are Not One and the Same." Id. at 71. "Issue Number Two" is "When the 'United States " is a Plaintiff, A *Constitutional* Court is Required." Id. at 73 (emphasis in original). They describe "Issue Number Three" as "The Act of June 25, 1948, 62 Stat. 869, is vague and therefore unconstitutional" because it "attempted fraudulently to conceal the Article III district courts of the United States, and to create the false

---

[1] Among these is a lengthy dissertation on the "Dick Act of 1902 also known as the Efficiency of Militia Bill H.R. 11654, of June 28, 1902," which, according to plaintiffs, "invalidates all so-called gun control laws." Id. at 5.

[2] The type-written number at the bottom of the page wherein plaintiffs make these accusations is "8," but the handwritten notation is "70 of 116" due to the insertion of the full text of the ACLU and Hazel-Atlas Glass Co. cases after page 7 of plaintiffs' allegations.

impressions [sic] that they had been redefined as, replaced by, and/or rendered synonymous with, the United States District Courts." Id. at 77. As a result, plaintiffs allege, they enjoy "fundamental Immunity from summary criminal proceedings." Id. at 79.

The Complaint then purports to address the "extra legal system" which they define as a "fraud perpetuated by the American Bar Association and constituent enterprises such as the state bar association, state bars, county bar associations, and associations of so-called bar lawyers." Id. at 81. As "[v]erification of sham legal process festering in the court system," plaintiffs reference 63 cases in various federal courts, eight of which are or were pending in this district. Plaintiffs then state:

> Even cursory review of the above and foregoing files demonstrate that all judges and circuit judges involved in these cases including the United States Supreme Court, proceed as if they know little or nothing about the law. No doubt, many of the involved judges such as the infamous James H. Payne and Claire Eagan are quite literally so dumb they are pathetic. For the most part, however, federal judges including magistrates and clerks, circuit court judges including law clerks and clerks, and the United States Supreme Court, definitely including clerks and law clerks, are simply imposing the unpublished rules of the extra-legal system over the published rule of law with the intent and the result of the bar controlling America's court for the illicit purpose of fraud and extortion including, whenever necessary, profiteering from the prison industry. A jury shall determine that the federal judiciary, from the bottom to the top is absolutely shamelessly corrupt and in fact down right evil.

Id. at 86 (emphasis in original). Plaintiffs then launch into a section on "Involuntary Servitude and Peonage," id., and specifically move for the removal of defendant William F. Downes from his duties as a federal judge, id. at 89.

The Complaint includes a section of "Federal Questions" wherein plaintiffs ask for admission or denial of 66 statements, many of which seek an admission that all immunity defenses are invalid, id. at 90-95. Other statements appear to seek admissions as to the law applicable to issues involving civil rights, child custody, privacy, taxes, criminal procedure, divorce, federal

grants, and judicial powers, among others that defy categorization. Id. at 95-109. A sampling of the more concise "questions" or statements follows:

> 32. Does the Constitution give people any right to proceed or be proceeding against, for instance, in an inferior federal **constitutional court** rather than a federal **legislative court**? [emphasis in original.]
>
> * * *
>
> 42. Anyone like Millie Leslie can falsely accuse without any risk or persons like Judge Joe Heaton declares [sic] it is not a constitutional issue to file false affidavits under the penalty of perjury.
>
> * * *
>
> 46. The Sixteenth Amendment was ratified.
>
> * * *
>
> 53. Is it not a Constitutional requirement for a state to be ratified by the people of the state to become a state.
>
> * * *
>
> 57. Congress never did approve circuit courts.
>
> * * *
>
> 59. Fourteenth Amendment Section 3 citizens who rescinded their office in 1868 still hold vacant offices today.
>
> * * *
>
> 60. The treaty for Puget Sound Agricultural Company [is] still in effect today.
>
> * * *
>
> 65. All courts must take judicial notice of a Land Patent and Land Patents can not be collaterally attacked.

Id. at 98 - 103.

Near the end of the Complaint, plaintiffs challenge the licensing of attorneys and an alleged "racket" run by attorneys, including those in the judiciary. Id. at 109-13. Among other things, plaintiffs state that "most judges have been cheating Citizens for so long through sham legal process that they no longer know anything about rules (IF THEY EVER DID) and are only cognizant of the unwritten rules used for purpose of fraud and extortion." Id. at 109 (emphasis in original). They appear particularly aggrieved by the practice of appellate courts in marking opinions "Not for Publication" and by the alleged "secrecy" involved in the decision-making of all federal courts, including the United States Supreme Court. Id. at 111-12. Plaintiffs also assert that "the patently

4

criminal organization The Administrative Office of the U.S. Courts, simply cover[s] up the complaints about judges by calling everything that a judge does short of murder or rape a 'judicial act.'" Id. at 112 (emphasis in original). In the "Conclusion," plaintiffs call for the Oklahoma Supreme Court to declare unconstitutional certain statutory provisions relevant to the creation and governance of the Oklahoma Bar Association. Id. at 113.

Finally, the "[r]emedy sought" by plaintiffs includes requests for (1) the Court to put an end to the Oklahoma Bar Association; (2) investigation, removal from office, and prosecution of every federal judge who has violated 18 U.S.C. § 1341 (mail fraud) as well as 18 U.S.C. §§ 1961, 1962 (provisions in the Racketeering Influenced and Corrupt Organizations Act); (3) a jury determination that defendants have violated those laws and damaged plaintiffs' business or property interests; (4) an order compelling the defendants to "cease and desist any association with the federal court system whatsoever"; and (4) treble damages. Complaint, Dkt. #1, at 114-15.

The Complaint was accompanied by 928 pages of attachments which include, among other things, affidavits of four plaintiffs; docket sheets from another case in which plaintiff Eddie L. Andrews has appeared and pleadings he has filed in other cases; congressional resolutions, reports and bills; records of an Ohio probate court; United States Code provisions relating to the State Justice Institute ("SJI") and information about SJI grants awarded in Oklahoma, Texas, and Ohio; payroll information for certain county prosecutors in Ohio; an extensive file on the investigation of a police shooting in Ohio; a copy of the Code of Conduct for Judicial Employees; a handbook purporting to advise parents and caregivers on their rights when a state agency investigates allegations of child abuse and neglect; and the California Judges "Benchguides" for custody and visitation as well as juvenile dependency proceedings.

**II.     Additional Pleadings**

Since the filing of the Complaint, plaintiffs have inundated the Court with pleadings, many of which are difficult to docket. Plaintiff Carl Weston filed a Motion to Certify Class Action (Dkt. # 12) on September 22, 2006. Since then, numerous individuals who were not listed as plaintiffs in the Complaint have attempted to file appearances or be joined the action, or they have filed some kind of notice alleging that their due process rights were violated. (Dkt. ## 13, 28, 30, 31, 33, 34, 36, 38, 39, 40, 42, 45, 46, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 68, 69, 70, 71, 72, 73, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89.) It appears that many of these individuals reside in other states, including states not listed as defendants. At least one of these documents contains an attachment that appears to be some type of court document created by plaintiffs to solicit class members. (See Dkt. # 40.)

In response to the motions to dismiss, plaintiffs have filed numerous motions that purport to be motions for summary judgment, motions to strike, or some other pleading filed in response to the motions to dismiss. (See Dkt. ## 18, 19, 20, 21, 22, 23, 35, 37, 41, 44, 66, 95). Two, in particular, include accusations of fraud and perjury by the defendants who filed the motions to dismiss and/or the attorneys who signed the motions. (Dkt. # 18, 95.) Plaintiffs have filed similar documents in response to other defendants who have entered an appearance or filed an answer in this case. (See Dkt. ## 52, 67, 74.)  While the frequency of filing and the volume of pleadings would not cause the Court to prioritize pending motions in most cases above other matters previously entered on its docket, further delay in this matter would result in needless litigation costs, serve only to prejudice the defendants, and further burden the Court, thus delaying justice for litigants who have stated a claim upon which relief may be granted.

**III.     Failure to State a Claim**

A motion to dismiss based on Fed. R. Civ. P. 12(b)(6) for failure to state a claim is properly granted when it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207 (10th Cir. 2005).  When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the nonmoving party.  E.g., Yanaki, 415 F.3d at 1207.  However, the Court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee County Board of County Commissioners, 263 F.3d 1151, 1154-55 (10th Cir. 2001).[3]

Generally, a pro se litigant's complaint is afforded a liberal interpretation and construction.  Haines v. Kerner, 404 U.S. 519, 596 (1972).  However, a district court is not required "to assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Consequently, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," and "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted."  Id.  A district court may dismiss a pro se complaint *sua sponte* only where it is "patently obvious" the plaintiff cannot prevail on the facts alleged and an opportunity to

---

[3]The Ohio defendants also specifically move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  They argue, like the Oklahoma Attorney General, that they are immune from suit under the Eleventh Amendment of the United States Constitution.  While they may be, the Court does not address this argument because dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate, and not all of the defendants are states or state officials.

amend the complaint would prove futile. Id.; see Howard v. Lemmons, 547 F.2d 290, 290 n.1 (5th Cir. 1977).

Pro se plaintiffs are required to adhere to the same rules of procedure as any other litigant. Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). Under the Federal Rules of Civil Procedure, claims for relief are required to contain

> (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a). Plaintiffs' Complaint contains no short and plain statement of the claims. As such, it fails "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas, 891 F.2d 1473, 1480 (10th Cir. 1989) (quoting Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1371 (10th Cir. 1979)). For purposes of rebuttal, the Oklahoma Attorney General, the Ohio defendants, and CNA have stretched to find some legal claim amidst the allegations.

The Court declines to painstakingly address each conclusory allegation purporting to rest upon some constitutional or statutory right. Undoubtedly, most, if not all, of the defendants would be entitled to immunity but, other than providing the defendants' names, plaintiffs have not identified who the defendants are or what act any of them performed which led a deprivation of plaintiffs' rights. Even accepting the poorly-pleaded and conclusory allegations of the Complaint

as true and construing them liberally in the light most favorable to the plaintiffs, the Court cannot discern sufficient facts upon which any recognized legal claim would be based.

**IV.   Admonition**

While the Court is aware that it is not to look outside the pleadings in ruling on a motion to dismiss, plaintiffs filed more than 900 pages of documents *with their Complaint*, and more than 300 pages of documents with their various responses to the motions to dismiss. The Court does not rely on these attachments in its determination that plaintiffs have failed to state a claim, but the attachments, together with the pending motions to dismiss, give the Court some clue as to the motivations underlying the vague and conclusory allegations of the Complaint. The Oklahoma Attorney General and the Ohio defendants further elucidate who among the plaintiffs is behind the allegations.

The Oklahoma Attorney General draws the Court's attention to a case cited by plaintiffs in the Complaint, Andrews v. Russell, No. CIV-06-652-WFD (W.D. Okla.). Plaintiff Eddie L. Andrews also attached to his affidavit a docket sheet from that case and an appeal of a decision in that case. The Oklahoma Attorney General attached the "Order Dismissing Suit for Failure to State a Claim and Striking Plaintiff's Motions for Summary Judgment," authored by United States District Judge William F. Downes, who was chosen to sit by designation and later added by Andrews as a defendant in that case. Andrews v. Russell, Nos. CIV-06-410-WFD, CIV-06-652-WFD, 2006 WL 2092564 (W.D. Okla. July 25, 2006). In the order, Judge Downes explains that Andrews filed suit in federal court after growing frustrated with state court child custody proceedings. Slip op. at 1-2.

When rulings by United States District Judge Joe Heaton and the Tenth Circuit Court of Appeals did not go in Andrews' favor, he filed suit against every federal district and magistrate

judge in the Western District of Oklahoma, every judge on the Tenth Circuit Court of Appeals, a large number of court staff and several private attorneys. Id. at 2, 6 n.3. The Honorable William F. Downes, who sits in the District of Wyoming, was asked to sit by designation. Judge Downes did not rule in Andrews' favor either, and appealed to Andrews to "exercise good judgment, and end this fruitless course of conduct." Id. at 8. He also labeled Andrews' litigation as groundless and vexatious, and imposed filing restrictions on Andrews as a result. Id. at 8-10.

Hence, Andrews essentially refiled here in the Northern District of Oklahoma, with a little help from others who apparently are disgruntled by their lack of success in judicial proceedings. The Ohio defendants point out that the Northern District of Ohio has previously addressed similar allegations brought by plaintiff Rodney Class, who has also been very active in this lawsuit. In the Ohio case, Class alleged that the numerous Ohio officials and judges, among others, engaged in racketeering when they did not cooperate with his efforts to challenge a traffic matter. The Northern District of Ohio dismissed his complaint, labeled him a "vexatious litigator," and enjoined him from filing the same type of complaint he filed in this case without meeting certain requirements of the Northern District of Ohio.[4] See Class v. Gwin, 5:06-CV-1465 (N.D. Ohio July 25, 2006) (cited in the Complaint at p. 21).

Finally, Carl Weston is no stranger to this Court. In 2001, the Court denied his petition for writ of habeas corpus which he filed in connection with his incarceration after he was found guilty of indirect contempt of court for failure to pay child support. Weston v. Woodward, No. 99-CV-557 N.D. Okla. June 12, 2001). The Tenth Circuit remanded the case to the district court with

---

[4] The Northern District of Ohio remarked that Class had filed at least three previous federal actions in that court which were all dismissed as frivolous. (Order, Dkt. # 51, at 4.)

10

instructions to dismiss Weston's petition as moot. <u>Weston v. Woodward</u>, No. 01-5104, 2002 WL 49920 (Jan. 15, 2002). Apparently feeling aggrieved by the Tenth Circuit decision, Weston proceeded to sue the employees of the Office of the Clerk for the Tenth Circuit whom he blamed for sending the mandate to this Court. <u>Weston v. Schluler</u>, 03-CV-219-CVE-PJC (N.D. Okla. March 4, 2004). This Court dismissed his claims, stating "Weston has not met his burden to allege sufficient facts on which a recognized legal claim could be based. In fact, his Complaint borders on the frivolous, and the filing of similar or related complaints in the future could subject him to sanctions under Fed. R. Civ. P. 11." (Order, Dkt. # 17, at 5.)

While the Court does not determine, at this time, whether sanctions under Fed. R. Civ. P. 11 are appropriate in this case, or whether filing restrictions need to be placed on any future lawsuits filed by plaintiffs in this Court, the history of these three plaintiffs in federal court is very troubling to the Court. Their use of personal insults and attacks on the defendants and their counsel in the instant lawsuit is particularly egregious and leads the Court to forewarn plaintiffs that continued abuse of the legal process will not be tolerated. As Judge Downes cogently stated in <u>Andrews v. Russell</u>, "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which hampers their ability to carry out the functions mandated by Article III of the United States Constitution." <u>Id.</u>, No. CIV-06-510 WFD and CIV-06-652-WFD, at 8 (W.D. Okla. July 25, 2006).

11

**V.     Conclusion**

**IT IS THEREFORE ORDERED** that the motions to dismiss (Dkt. ## 11, 49) are hereby granted; all other pending motions filed by defendants are moot; all pending motions filed by plaintiffs are denied; and all of plaintiffs' claims against all defendants are dismissed with prejudice. This case is hereby terminated.

Dated this 24th day of October, 2006.

TERENCE KERN
UNITED STATES DISTRICT JUDGE